FILED

UNITED STATES DISTRICT COURT
Northern District of Ohio 2017 SEP -6  PM 2: 33

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

John A. Olagues, Pro Se
A shareholder of TimkenSteel Corp.

5:17  CV  1870
JUDGE ADAMS

Plaintiff

Private Right of Action
Under Section 16 b of the
Securities Act of 1934
Case #

V.

MAG. JUDGE LIMBERT

Ward Timken Jr.  Pres. and CEO of
TimkenSteel Corp &
TimkenSteel Corp , nominal defendant

Defendants

## COMPLAINT
## JURY TRIAL DEMANDED

1. Plaintiff, alleges, based upon knowledge with respect to the facts relating
to defendants upon information and belief with respect to all other allegations, as
follows:

## INTRODUCTION

2. This action is brought pursuant to Section 16(b) of the Securities Exchange Act of
1934, as amended (the "Exchange Act"), [15 U.S.C. 78p(b)] ("Section 16(b)") in
order to recover short-swing insider trading profits realized by defendant  Ward
Timken Jr. while he was a statutory insider and officer of TimkenSteel Corp.

3. Ward Timken Jr.  at all relevant times was the CEO of TimkenSteel Corp . within
the meaning of Section 16(b).

1

4. Section 16(b) requires company insiders to disgorge any profits earned by Section 16 (b) insiders through short-swing insider trading (i.e., non-exempt purchases and sales, or non-exempt sales and purchases, of the company's equity securities, within less than a six month period). Actual misuse of inside information is not an element of the claim although the statute embodies a presumption that statutory insiders have access to such inside information.

5. The SEC is allowed to pass rules that exempt transactions that are "not comprehended to be within the purpose" of Section 16 b of the 1934 Securities Act as stated in section 16(b) shown below:

*__"(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase,__ of any equity security of such issuer (other than an exempted security) or a security-based swap agreement involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months.*

*Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. __This subsection shall not be construed to cover any transaction__ where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security or security-based swap agreement or a security-based swap involved, or any transaction __or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."__*

The part allowing the SEC limited authority to make Rules for exemptions of Section 16 (b) is confirmed by the Court in Levy v. Sterling as below:

### United States Court of Appeals,Third Circuit.

### Mark LEVY, Appellant v. STERLING HOLDING COMPANY, LLC;  National Semiconductor Corporation;  Fairchild Semiconductor International, Inc.No.  07-1849.   Decided: October 1, 200

*According to the statute itself, the purpose of section 16(b) is "preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer." 15 U.S.C. § 78p(b). The statute authorizes the SEC to promulgate rules and regulations exempting from liability transactions that are "not comprehended within[this] purpose." Id.;  see Levy I, 314 F.3d at 112. Exercising this authority, the SEC has established a number of section 16(b) exemptions. See 17 C.F.R.§§  240.16b-1, .16b-3, .16b-5 to .16b-8 (codifying SEC Rules 16b-1, 16b-3, and 16b-5 to 16b-8).*


### PARTIES

- Plaintiff, John Olagues, shareholder of  TimkenSteel Corp

- Defendant Ward Timken Jr.   President and CEO of TimkenSteel Corp

- Defendant,  TimkenSteel Corp


6. TimkenSteel Corp , Common Stock is registered with the SEC pursuant to Section 12 of the Exchange Act and the Common Stock trades on the NASDAQ under the symbol  TMST.


7.  TimkenSteel Corp. is a necessary party as this securities enforcement action is brought by Plaintiff in order to obtain a recovery for the firm,  TimkenSteel Corp.

3

JURISDICTION AND VENUE

8. Jurisdiction of this Court is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. §78aa].

9. Venue is properly laid in this District because Defendant, Ward Timken Jr. is located in this District.

SUBSTANTIVE ALLEGATIONS

10. The relevant transactions shown on Form 4s filed with the SEC by Defendant Ward Timken Jr. are listed below. The Documents from SEC Form 4s, attached as **Exhibit A,** show the relevant filings by Defendant Ward Timken Jr. , who was the President and CEO when the purchases and dispositions illustrated below were made. The purchase of the 50,000 TimkenSteel shares by Mr.Ward Timken Jr. was a market purchase and not exempt from 16 (b). This is conceded by defendants.

11. The shares disposed of to the issuer were discretionary payments by Mr. Timken for the exercise price and for a tax liability. Mr. Timken entered a Code "F" in column 3 of Table I on the SEC Form 4.com, which does not indicate that there is an exemption from section 16 (b) via SEC Rule 16 b-3(e). Had he believed that the dispositions were exempt, he should have entered a code "D".

12. **Six Required Elements to be shown by Plaintiff for Section 16 b enforcement**

A.      non exempt purchase and a non exempt sale of equity securities of the issuer within less than 6 months by an officer, director or owner of greater than 10 % of the stock.

B.      The insider must be an officer, director or greater than a 10% beneficial owner when the non exempt purchase and non exempt sale are made

C.      There must be a profit made between the two transactions ( a purchase and a sale).

D.      The Plaintiff/shareholder must be an owner of issuer securities, when the suit is initiated by Plaintiff.

E.      The suit must be filed within less than two years from the last non exempt transaction.

F.      The issuer must be notified by the shareholder of the Section 16 b violation and then given 60 day within which to seek recovery from the insider.

4

13. All of the required elements for recovery of the profits from Mr. Timken are present. But attorneys for CEO Timken will argue that the dispositions to the issuer are exempt from section 16 (b) since they will claim the dispositions are approved by the company in order to achieve an exemption from section 16 (b) via SEC Rule 16 b-3(e). They will make such a claim notwithstanding the fact that on the SEC Form 4, it was indicated on column 3 Table 1 that the transaction was an code "F" Transaction, which does not indicate that the transaction was exempt from section 16 (b) via SEC Rule 16 b-3(e).

14. Below is a list of the matched non exempt transactions for

## Ward Timken Jr. CEO and President

| Shares Purchased | Date | Price | Shares Disposed | Date | Price | Profit |
|---|---|---|---|---|---|---|
| 45,187 | 8/5/2015 | $18.24 | 45,187 | 2/20/2015 | $30.43 | $546,310 |
| 813 | 8/5/2015 | $18.24 | 813 | 2/8/2015 | $28.56 | $8,390 |

Total Recoverable Profit……….**$554,700**

The Shares Purchased were non exempt market purchases by Timken Jr.

The shares disposed of were to pay the exercise price of
57,000 x $18.56 = $1,057,920

plus

Payment of axes of $317,120 for the profits on 57,000 x $11.87  = $676,590.

I am not able to determine exactly what the disposition of the 813 shares was for.

-----------------------------------------------------------

5

15. The 2 paragraphs below indicate the:

## Method of Payment of the exercise price of
## Non Qualified Stock Options

Paragraph 1 is from the **2015 Proxy Statement page 79**

Each grant of an option right will specify the applicable terms of the option right, including the number of common shares subject to the option right and the applicable vesting and forfeiture provisions. In addition, each grant will specify the form of consideration to be paid in satisfaction of the exercise price, which may include: (i) cash, check or other cash equivalent acceptable to the Company; (ii) nonforfeitable, unrestricted common shares already owned by the participant with a value at the time of exercise that is equal to the total exercise price; (iii) subject to any conditions or limitations established by the Compensation Committee, by a net exercise arrangement pursuant to which the Company will withhold common shares otherwise issuable upon exercise of an option right; (iv) any other legal consideration that the Compensation Committee may deem appropriate, including, to the extent permitted by law, pursuant to a broker-assisted cashless exercise procedure; and (v) any combination of the foregoing methods.

16. Paragraph 2 is from the Grant Agreement for Employee Stock Options

## TIMKENSTEEL CORPORATION

## Nonqualified Stock Option Agreement

4.   <u>Payment of Option Price</u>. The Option Price shall be payable (a) in cash in the form of currency or check or other cash equivalent acceptable to the Company, (b) by transfer to the Company of nonforfeitable, unrestricted Common Shares that have been owned by the Optionee for at least six months prior to the date of exercise, (c) subject to any conditions

6

or limitations established by the Committee, the Company's withholding Common Shares otherwise issuable upon exercise of the Option pursuant to a "net exercise" arrangement, or (d) by any combination of the methods of payment described in Sections 4(a), 4(b) and 4(c) hereof. Nonforfeitable, unrestricted Common Shares that are transferred by the Optionee in payment of all or any part of the Option Price and Common Shares withheld by the Company shall be valued on the basis of their Market Value per Share. Subject to the terms and conditions of Section 7 hereof and Section 12 of the Plan, and subject to any deferral election the Optionee may have made pursuant to any plan or program of the Company, the Company shall cause certificates, if applicable, for any shares purchased hereunder to be delivered to the Optionee upon payment of the Option Price in full.

-----------------------------------------------

17.  It is clear from the two paragraphs that Mr. Timken had discretion as to how to pay the exercise price of the Non Qualified ESOs. Those choices are below:

Choice 1 with Cash

Choice 2 with unrestricted shares

Choice 3 with  a net exercise arrangement

Choice 4 by a combination  of the three choices above.

The two paragraphs assume that the company must accept his disposition of shares. This put Mr. Timken in superior standing relative to the company since Mr. Timken Jr. could choose the timing and the method to pay the exercise price and the taxes.

7

18. **Requirements for exemptions**

In order to achieve an exemption  from Section 16 (b) of the 1934 Act,  for a transaction, the following elements are required according to the American Bar Association and the New York Bar Association, which are endorsed by the SEC in the Release of August 9, 2005

1.  The SEC must exempt this type transaction as "not comprehended within the purpose of section 16 (b)."
2.  The officer's transactions to the issuer must not be done when the insider has superior footing and.
3.  There is satisfaction of "gate keeping conditions" that are required by the SEC Rules to get an exemption.

   **None of the required elements for exemptions are present here**


## BASIS FOR INFORMATION AND BELIEF

19. Plaintiffs' information and belief is based on, among other things, the SEC Form 4s referenced herein in **Exhibit A** and the violations of the Securities law as described above.


## ALLEGATIONS AS TO DEMAND

20. Plaintiffs notified  TimkenSteel Corp.  of the facts alleged above (the "Demand"). Attorneys for  TimkenSteel Corp.  refused to request disgorgement of the profits from  Mr.  Timken and refused to file suit to recover such profits totaling $554,700  as a penalty to TimkenSteel Corp.

21. The attorneys for TimkenSteel Corp. in a letter to Plaintiff, alleged that the disposition from Mr. Timken to TimkenSteel Corp.  was exempt from Section 16 b of the 1934 Act via SEC Rule 16 b-3(e) and thus the attorneys alleged that the disposition of  shares on 2/20/2015  or on 2/8/2015 could not be matched with any of the market purchases of shares on 8/5/2015.

## PRAYER FOR RELIEF

22. WHEREFORE, Plaintiff prays for judgment against Defendant,  CEO  Ward Timken Jr.  in an amount to be determined at trial, plus prejudgment interest, post-judgment interest and such other and further relief as this Court may deem just and proper.

23. The amount to be at a minimum of $ 554,700 which is the total profit received from matched non exempt purchases and non exempt dispositions.

Respectfully Submitted

John Olagues
413 Sauve Rd.
River Ridge LA. 70123
olagues@gmail.com
504-305-4071

9