FILED

2017 DEC 22 PM 12: 32

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

UNITED STATES DISTRICT COURT
Northern District of Ohio

John A. Olagues, Pro Se
A shareholder of TimkenSteel Corp.

        Plaintiff          Private Right of Action
                                        Under Section 16 b of the
                                        Securities Act of 1934
     V.                                Case No. 5: 17 - CV- 1870 JRA

Ward Timken Jr. Pres. and CEO of
TimkenSteel Corp &
TimkenSteel Corp , nominal defendant

        Defendants

## Motion for Summary Judgment

Plaintiff, John A. Olagues is a graduate of Tulane University with a BA in Math. He was a stockbroker, an investment advisor and became an Options Market Maker on the floor of the Pacific Stock Exchange in San Francisco for five years, where he was the volume leader and holder of the largest positions in puts and calls. He then went to Chicago and did the same as the volume leader there also on the CBOE, the largest Options Exchange in the world. He personally executed on average 100 trades in puts and calls per day for his own personal account.

In 2003 he decided to apply his experience with trading options to the arena of equity compensation, especially with regard to Employee Stock Options. He became a consultant to executives and other employees who held substantial positions in equity compensation grants and wished to manage the grants efficiently.
In 2010 he wrote the book "Getting Started in Employee Stock Options" published by Wiley & Sons, which is the only book that explains how to manage the grants of Employee Stock Options efficiently. **See Exhibit 1**

1

In 2006, he filed his first claim against an insider for a violation of Section 16 (b) in the Northern District of California trying to recover $55 million for the company, Yahoo Inc.

Eight years later, Plaintiff realized the extent to which officers, directors and holders of greater than 10% of the company shares, were willing to go and violate Section 16 (b) of the Securities Exchange Act of 1934 to maximize their extraction of wealth from the issuer.

Yet very few claims were being made against these insiders as most of the violations were related to Equity Compensation, exercise price and tax payments.

Ninety percent of the Equity Compensation Plans were and still are designed to allow insiders to maximize the wealth extraction from the company. Most Equity Compensation Plan designs promote violations of Section 16 (b). The SEC rules that create exemptions for transactions are misinterpreted by the executives and their attorneys. The enforcement of Section 16 (b) can be done only by the issuer or a shareholder. And managers at the companies do not want to accuse their top executives of 16 (b) violations and very few shareholders understand section 16 (b).

The complexities of Section 16 (b), especially when derivatives are involved, make it such that very few attorneys wish to act as plaintiff attorneys unless the recovery amounts are very high and the cases are relatively simple.

The Plaintiff here is perhaps the foremost expert in the country in understanding the application of Section 16 (b) when derivative securities are involved with equity compensation and dispositions to the issuer.

This case is about employee stock options granted to Ward Timken Jr., which were exercised at a time determined at his discretion. See **Exhibit 2**. The payment of the exercise price and the tax withholding was to be made in either cash or shares by Mr. Timken, Pres and CEO. If the decision to deliver cash or shares to the company for exercise price payments or for taxes to be withheld was at the option of Mr. Timken, there was no exemption from section 16 (b) for the transactions available. If the choices were at the discretion of the issuer, TimkenSteel , there was also no exemption available to him from section 16 (b). The dispositions to the issuer are matched with the purchase of shares in the market within less than 6 months.

2

There was clearly discretion by either Mr. Timken or the company, either of which precludes the specificity required for an exemption from 16 (b) of the securities Exchange Act. This preclusion of an exemption from 16 (b) when the required specificity is lacking was illustrated in the **Q and A** to and from the SEC staff below

*Compliance and Disclosure Interpretations, Exchange Act Section 16 and Related Rules and Forms*, Q. 123.16 (May 23, 2007).

**Question: Would approval of a grant that by its terms provides for automatic reloads satisfy the specificity of approval requirements under Rule 16b-3(d) for the reload grants?**

**Answer: Yes. Approval of a grant that by its terms provides for automatic reloads would satisfy the specificity of approval requirements under Rule 16b-3(d) for the reload grants, unless the automatic reload feature permitted the reload grants to be withheld by the issuer on a discretionary basis.**

**The same result applies under Rule 16b-3(e) where the automatic feature is a tax- or exercise-withholding right. [May 23, 2007].**

Below are the non exempt matched purchases and dispositions (sales) by Mr. Timken Pres. and CEO for the exercise price and taxes that Plaintiff relies upon for this Section 16 (b) suit.

**Ward Timken Jr.**

| Shares Purchased | Date | Price | Shares Disposed | Date | Price | Profit |
|---|---|---|---|---|---|---|
| 45,187 | 8/5/2015 | $18.24 | 45,187 | 2/20/2015 | $30.43 | $546,310 |
| 813 | 8/5/2015 | $18.24 | 813 | 2/8/2015 | $28.56 | $8,390 |

Total Profit………..$554,700 when the payments for the exercise price and the tax liability were matched with the market purchases

Below are graphs of the stock prices when the market purchases were made and the discretionary dispositions to the company were made. **See Exhibit 3**

3



**Arrow points to date of dispositions of stock at $30.43 per share on 2/20/2015**



**Arrow points to date of market purchase of stock at $18.24 per share on 8/5/2015**

4

## Section 16 (b) of the Securities Exchange Act of 1934 is below:

*"(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months.*

*Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized.*

*This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security or security-based swap agreement or a security-based swap involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."*
*---------------------------------------------- End of section 16 (b)*

Section 16 (b) has the purpose of **"*preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer,*"**

Certainly Mr. Timken Jr. was the CEO, Chairman and President of TimkenSteel Corp. and had inside information obtained by his position. There is no question, even by the attorneys for Mr. Timken, that the market purchase of the 50,000 shares on 8/5/2015 was within the purpose of Section 16 (b) and could not be exempted. The only questions by the attorneys are:
(1) whether the dispositions to the issuer for the exercise price and the tax liability are comprehended within the purpose of section 16 (b) and

5

(2) whether there was sufficient specificity to **satisfy the specificity of approval requirements under Rule 16b-3(e) and Note 3, which are below**

*(e)Dispositions to the issuer. Any transaction, other than a Discretionary Transaction, involving the disposition to the issuer of issuer equity securities, whether or not intended for a compensatory or other particular purpose, shall be exempt, provided that the terms of such disposition are approved in advance in the manner prescribed by either paragraph (d)(1) or paragraph (d)(2) of this section.*
*And*

*Note (3):*
*The approval conditions of paragraphs (d)(1), (d)(2) and (e) of this section require the approval of each specific transaction, and are not satisfied by approval of a plan in its entirety except for the approval of a plan pursuant to which the terms and conditions of each transaction are fixed in advance, such as a formula plan. Where the terms of a subsequent transaction (such as the exercise price of an option, or the provision of an exercise or tax withholding right) are provided for in a transaction as initially approved pursuant to paragraphs (d)(1), (d)(2) or (e), such subsequent transaction shall not require further specific approval.*

It is quite clear that Mr. Timken Jr. had control over the timing of the exercise of the Employee Stock Options and had control over the method of paying the exercise price and the tax liability. On 2/20/2015 he exercised his discretion of when to exercise and to use shares to pay the exercise price and the tax liability. The discretionary dispositions **(See Exhibit 4)** of the shares to pay the exercise price and the tax liability are transactions ""*comprehended within the purpose of this subsection* "and can not be exempted by the SEC, even if they were approved consistent with the requirements of SEC Rule 16 b- 3(e). The ABA and the NY State BA both expressed the view that an exemption requires equal standing by the inside in relation to the issuer. See **Exhibit 5. Mr. Timken's standing was far Superior to the issuer's standing since Mr. Timken could use the inside information and the issuer was required to accept Timken's choice.**

In addition the transactions were not approved consistent with the requirements of SEC Rule 16 b-3(e) as the dispositions were discretionary by both Timken and the issuer. Attorneys have shown nothing and can show nothing in the future which demonstrates that the transactions were "*not comprehended within the purpose of this subsection 16*

6

*(b)"*. Nor have they shown that the transactions met the specificity requirements for an exemption under SEC Rule 16 b-3(e). Nor will they be able to make such a showing in the future.

## Summary

All of the requirements to recover the $554, 700 have been demonstrated as below.

1. There was a non exempt purchase in the market of 50,000 shares at $18.24 shares on 8/5/2015.

2. There was a non exempt disposition to the issuer of a total of 45,187 shares at $30.43 per share on 2/20/2015 and a non exempt disposition of 813 shares at $28.56 on 2/8/2015.

3. Both the purchases and the sales (dispositions to the issuer) were transacted when Mr. Timken was an officer of TimkenSteel Corp.

4. Olagues is now and was a shareholder at the time the suit was instituted.

5. TimkenSteel Corp, was notified of the violation of 16 (b) more than 60 days prior to the suit and was requested to recover the profits.

6. Olagues has never made vexatious filing in any suit or other filings and attorneys for defendants can supply none.

7. Three US Courts of Appeals have allowed filings of section 16 (b) suits by pro se plaintiffs. Suits under 16 (b) are private rights of action where shareholders or the issuer are enforcing Section 16 (b) as the SEC does not enforce it. Suits under 16 (b) are not derivative suits with the plaintiff representing the issuer. If attorneys represented the shareholder, the shareholder would still be the plaintiff. The attorney would not be representing the issuer or the other shareholders. So the plaintiff's status does not change if the plaintiff was represented by an attorney, since under no circumstance is the plaintiff representing the issuer or the shareholders. See **Exhibit 6**

The Supreme Court in the Gollust v. Mendell case 501 U.S. 115, 127 said

"*Yet the indirect interest derived through one share of stock is enough to confer standing, however slight the potential marginal increase in the value of the share*". Also in the same case, the Supreme Court said: **"Section 16(b) provides standing of signal breadth, expressly limited only by the conditions that the plaintiff be the "owner of [a] security" of the "issuer" at the time the suit is "instituted."**

*"Any "security" - including stock, notes, warrants, bonds, debentures, puts, and calls, 15 U.S.C. 78c(a)(10) - will suffice to confer standing. There is no restriction in terms of the number or percentage of shares, or the value of any other security, that must be held."* and

*"To enforce this strict liability rule on insider trading, Congress chose to rely solely on the issuers of stock and their security holders. Unlike most of the federal securities laws, 16(b) does not confer enforcement authority on the Securities and Exchange Commission. It is, rather, the security holders of an issuer who have the ultimate authority to sue for enforcement of 16(b)."* and *"If the issuer declines to bring a 16(b) action within 60 days of a demand **by a security holder,** or fails to prosecute the action "diligently," 15 U.S.C. 78p(b), then the **security holder** may "institut[e]" an action to recover insider short-swing profits for the issuer. Ibid."*

Respectfully submitted:

John Olagues
413 Sauve Rd.
River Ridge LA 70123
olagues@gmail.com
504-305-4071

December 19, 2017

8